## B. McCRACKEN ET AL. v. PHILIP HAMBURGER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 7, 1890—Decided January 5, 1891.

Where, on the sale of a business and the plant in which it is conducted, the vendor, in pursuance of the contract of sale, remains in the management thereof under the same business name, the vendee will be liable upon the vendor's contracts for supplies, made with persons who had dealt with him before the sale, and at the time of the contracts were without notice of the change of ownership.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 106 October Term 1889, Sup. Ct.; court below, No. 467 September Term 1888, C. P. No. 1.

On August 6, 1888, a summons was served in assumpsit by B. McCracken & Son against Philip Hamburger. Issue.

At the trial on March 31, 1890, the plaintiffs proved and put in evidence a book account against George W. Jones, for grain sold in March, April, and May, 1884, to the amount of $469.47; also, certain agreements in writing between George W. Jones

---

* " Those clothing an agent with apparent authority are, as to persons dealing on the faith of such authority, conclusively estopped from denying it: " Mr. Justice MITCHELL, in Hubbard v. Tenbrook, 124 Pa. 296.

Charge of Court below.

and the defendant Philip Hamburger, dated respectively September 1, 1881, March 1, 1882, and September 26, 1883, whereby the defendant had first acquired control and afterwards full ownership of the business and property of George W. Jones. These agreements are sufficiently explained in Poundstone v. Hamburger, ante 322, 323.

At the close of the testimony, the court, STOWE, P. J., charged the jury as follows:

This case has been so fairly presented to you, that I cannot add anything to what has been said. The whole question, admittedly, turns upon what credit you will give to the testimony of the witnesses.

The management of this business by Jones before the sale, and the subsequent fact that Jones retained his position in the distillery, without any visible change to persons who had dealt with him before, would fairly justify the jury in finding the defendant liable for any material bought for the use of the distillery. Mr. Hamburger, who had become the owner, would be liable for any contracts Jones would make for distillery purposes, without the parties selling had notice of a change of ownership, and such notice as would indicate to them that Jones had no right to bind Hamburger by purchasing material for the use of the distillery.

Upon that question, Mr. Hamburger says that, after the change of ownership, he gave the plaintiffs notice of the fact, told them that he had purchased the distillery, and, that thereafter he would do his own buying of supplies. If that is so, the plaintiffs had no right to sell anything to Jones and charge Hamburger for it. [If on the other hand, the plaintiffs never had any notice of the change of ownership, never had any notice that Jones was not authorized to buy materials for the use of this distillery, the evidence would indicate that the defendant was liable for the amount of this bill, and that too, without reference to whether the goods went into the distillery or not. Jones was left there as the apparent owner; and, having dealt with the plaintiffs before, with the knowledge, too, of Hamburger, it would be unfair to allow Hamburger to escape liability that was fairly imposed on himself by his own neglect of duty, because it was his duty to give notice to the plaintiffs of the change of ownership.] [1] . . . .

Opinion of the Court.

. —The jury returned a verdict in favor of the plaintiffs for $618.93. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1. The portion of the charge embraced in [  ] [1]

*Mr. Josiah Cohen* (with him *Mr. A. Israel*), for the appellant.

*Mr. Thos. Patterson* (with him *Mr. F. W. Hughey* and *Mr. F. S. Bennett*), for the appellees.

Counsel cited: Hubbard v. Tenbrook, 124 Pa. 291.

OPINION, MR. JUSTICE STERRETT:

In view of the facts which the evidence tended to prove, and which the jury, under the charge of the court, must have found as the basis of their verdict, there was no error in the instructions recited in the only specification before us.

It appears, among other things, that the rye, for the price of which plaintiffs obtained a verdict, was purchased by George W. Jones in March, April, and May, 1884, and shipped to him at Brownsville, where, for a long time before, he was engaged in carrying on the business of distilling. As proprietor of the distillery bearing his own name, Jones had considerable dealings with the plaintiffs. In September, 1881, defendant contracted with Jones for the entire product of his distillery, and advanced money to carry on the business. Six months thereafter, he advanced an additional sum, for which he was to receive half the net profits of the business. By an agreement of September 26, 1883, the distillery property was transferred to defendant for the consideration of $16,273.49, which was applied to Jones's indebtedness, etc., for money advanced to carry on the business. By the terms of that agreement, Jones was retained as distiller, and bound himself to give his entire time and attention to the "proper running of the distillery." The name and trade-mark, "George W. Jones," was also transferred to the defendant. That name was retained on the distillery, and business was continued as before, without any visible change in the premises, or in the manner of conducting the business; nothing, in fact, appears to have been done to indicate any change of ownership. In answer to the question

Opinion of the Court.

whether Jones did not continue "right along as he had been,"
defendant testified: "I run the distillery under the name of
Jones because he had been— Jones was known to the trade at
large."   "There was no visible change in relation to things."
Defendant also testified, in substance, that after he purchas-
ed the distillery, in October of same year, he commenced
dealing with the plaintiffs, purchased grain, etc., from them
for the distillery, and ordered the goods shipped to "G. W.
Jones, Brownsville; " that there was no visible change made
at the distillery, and such supplies as he purchased he ordered
shipped to "G. W. Jones," because the distillery was run
under G. W. Jones.   He, however, testified that shortly after
commencing to deal with plaintiffs in the fall of 1883, he in-
formed them that he had purchased the distillery, and was
carrying on the business for himself; but, in that he was con-
tradicted by both of the plaintiffs, who positively denied having
received any such information from him, or any one else, until
long after the rye in controversy was ordered for the distillery
by Jones, and shipped to his address.

In view of the foregoing, and other evidence of similar im-
port, the learned president of the Common Pleas was clearly
warranted in submitting the case to the jury on the questions
of fact to which their attention was called.   He instructed
them, in substance, that the management of the business by
Jones, before the sale, and the fact that he subsequently re-
tained his position in the distillery, without any change visible
to persons who had dealt with him before, etc., would fairly
justify them in finding defendant liable for supplies bought
for the use of the distillery; that defendant would be liable
for any contracts made by Jones for distilling purposes, unless
the parties with whom they were made had such notice of a
change of ownership as would indicate to them that Jones had
no right to bind Hamburger by purchasing supplies for the use
of the distillery.   Referring to the testimony of Hamburger,
wherein he stated, in substance, that he notified plaintiffs that
he had purchased the distillery, and would thereafter do his
own buying, etc., he said to the jury: "If that be so, the
plaintiffs had no right to sell anything to Jones and charge
Hamburger for it."   On the question of fact whether plaintiffs
had any such notice or not, the jury evidently found in favor

Statement of Facts.

of the plaintiffs' view of the case, as presented in the portion of the charge assigned for error.

The case hinged on questions of fact, which were fairly submitted to the jury, who found in favor of the plaintiffs. There appears to be no error that requires a reversal of the judgment.

Judgment affirmed.